IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KALYAN PUROHIT a.k.a. CLEMENT GORE,

    Plaintiff,

  v.

LEGEND PICTURES, LLC, d.b.a. LEGENDARY ENTERTAINMENT, UNIVERSAL STUDIOS LLC, and UNIVERSAL STUDIOS HOME ENTERTAINMENT LLC,

    Defendants.

Civil Action No. 18-1907-RGA

MEMORANDUM OPINION

Timothy Devlin, James Lennon, DEVLIN LAW FIRM LLC, Wilmington, DE;

    Attorneys for Plaintiff

Elizabeth Sloan, BALLARD SPAHR LLP, Wilmington, DE; David Grossman, LOEB & LOEB LLP, Los Angeles, CA;

    Attorneys for Defendants

March 24, 2020

**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6). (D.I. 18). The Court has considered the parties' briefing and related papers. (D.I. 19, 22, 24, 36, 37). The Court has reviewed Plaintiff's Book (D.I. 43) and YouTube Video (D.I. 42) as well as Defendants' Krampus Film (D.I. 41) and Graphic Novel (D.I. 47).

## I. BACKGROUND

In the instant case, Plaintiff's operative complaint alleges copyright infringement of his work entitled "The Krampus Night Before Christmas" ("the Book"). (D.I. 15 at 3). The text of the Book parodies Clement Clarke Moore's 1823 poem "A Visit from St. Nicholas" and tells the story of a family's visit from Krampus. (*Id.* at 5). Krampus is an anthropomorphic folklore figure who is the devilish foil of Saint Nikolaus. (*Id.* at 4-5). Plaintiff hired an artist to create illustrations for the Book to go along with the text that Plaintiff wrote. (*Id.* at 6). The artist assigned all rights in his illustrations to Plaintiff. (*Id.*). The Book was published on October 13, 2012, and Plaintiff obtained a United States copyright on the Book on September 13, 2017 (Registration No. TX0008463196). (*Id.* at 3). Plaintiff created a video in 2012 that he posted on YouTube ("YouTube Video"), in which a voiceover reads the text of the Book while illustrations from the Book are shown. (D.I. 15 at 6).

On November 30, 2018, Plaintiff filed the instant suit alleging that Defendants' "Krampus" motion picture ("Film") infringes his copyright in the Book. (D.I. 1 at 8). Defendants subsequently filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (D.I. 9). Plaintiff filed an amended complaint in response. (D.I. 15). Defendants then filed a Rule 12(b)(6) motion to dismiss the amended complaint. (D.I. 18).

1

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

### B. Copyright Infringement

"To establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). There are, in turn, two elements required to prove unauthorized copying of original elements of the plaintiff's work: (1) material appropriation of the copyrighted work, and (2) actual copying. *Tanksley v. Daniels*, 902 F.3d 165, 173 (3d Cir. 2018).

The material appropriation inquiry examines the "substantial similarity" between the protectable elements of plaintiff's work and defendant's work, asking whether a "lay observer" would believe that defendant's work copied protectable elements from plaintiff's copyrighted work. *Id.* at 174. This analysis requires the trier of fact to filter out the unprotectable elements of the copyrighted work and compare the remaining elements with the accused work to see if the two are substantially similar. *Id.* Under the *scènes à faire* doctrine, some elements are unprotectable because they are standard expressions that logically flow from a general idea and are therefore common among works of a kind. *Swirsky v. Carey*, 376 F.3d 841, 850 (9th Cir. 2004). The "total concept and feel" of a work can also show substantial similarity between two works. *Tanksley*, 902 F.3d at 175. This analysis can be helpful when the copyrighted work is a compilation of unprotectable elements, but the author's original contributions in the selection, coordination, and arrangement of those elements is protectable. *Id.*

Actual copying requires that the defendant used the copyrighted work in creating the infringing work. *Id.* A defendant's work is not infringing if it was created independently of the plaintiff's work. *Id.* Absent direct evidence, actual copying may be "shown through circumstantial evidence of access and similarity." *Id.*

"Upon review of the works themselves, if the court concludes that no trier of fact could rationally determine the two to be substantially similar, it can render a defense judgment as a matter of law." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.10[B][3] (2019). The Third Circuit has confirmed that district courts have authority to render such judgments on a motion to dismiss if "no reasonable juror could find substantial similarity." *Tanksley*, 902 F.3d at 172. I think this is such a case. The Court offered to hold a hearing to aid in its consideration of the substantial similarity analysis. (D.I. 34). Neither side requested a

hearing. (D.I. 36, 37). Defendants "[did] not object [to one]." (D.I. 36 at 1). Plaintiff "[was] willing to forego a further hearing [in reference to substantial similarity]." (D.I. 37 at 2). Based on the parties' responses, the Court obtained the relevant artistic works at issue (D.I. 38-43, 47), and I read or watched them. No one has suggested any other evidence, such as expert testimony, would make a difference.

## III. DISCUSSION

### A. Direct Infringement

#### a. Substantial Similarity

##### i. Plaintiff's Book

The first count of Plaintiff's amended complaint alleges that Defendants infringe Plaintiff's exclusive rights in the Book and other derivative works, including the YouTube Video. (D.I. 15 at 20). Plaintiff alleges that Defendants' Film is substantially similar to the Book in that it "copies original and distinctive elements" of the depiction of Krampus in the Book. (*Id.* at 9). Plaintiff's claimed "original and distinctive elements" include horns like those of a Walia ibex, a lack of black fur, a pronounced hunch, a long beard, glowing slanted eyes, a tattered red robe, limply bent arms, and clawed hands. (*Id.* at 9-10). Plaintiff also alleges that the Film "copies [the] original and distinctive" entrance of Krampus "through the chimney head-first, cracking part of the flue and spreading [his] hands out to the side of the fireplace" with a hood obscuring his eyes. (*Id.* at 11-12). Plaintiff further alleges that the Film "copies original and distinctive elements" of the Book like "dark elves," "demonic toys," and "evil, shaggy reindeer." (*Id.* at 12-15). Plaintiff also claims that the Film's title style "copies the distinctive and creative title style of the [Book]." (*Id.* at 15). Finally, Plaintiff claims that the cover of Defendants' Graphic Novel (a companion work to the Film) "copies the distinctive and creative

4

cover image of the [Book]" and that the depictions of Krampus in the Graphic Novel infringe those in the Book. (*Id.* at 16-17).

Plaintiff's allegations of infringement of the Book focus around the image of the Krampus character. I will therefore begin with the Krampus character and filter out the unprotectable elements. As Plaintiff states in his complaint, the Krampus character in the Book is based on the folklore Krampus, a public domain character. (*Id.* at 4-5). The Krampus character in the abstract is thus unprotectable because it is an idea and in the public domain. 17 U.S.C. § 102(b); *DiTocco v. Riordan*, 815 F. Supp. 2d 655, 666, 668 (S.D.N.Y. 2011). While a public domain character is unprotectable, a particular expression of that character might be protectable if it is a "distinguishable variation." *Gerlach-Barklow Co. v. Morris & Bendien, Inc.*, 23 F.2d 159, 161 (2d Cir. 1927).

Applied to Plaintiff's Krampus, only elements that distinguish the Book's illustrations of Krampus from the Krampus in the public domain may be protectable. Plaintiff contends that those elements are the horns like those of a Walia ibex, a lack of black fur, a pronounced hunch, a long beard, glowing slanted eyes, a tattered red robe, limply bent arms, and clawed hands. (D.I. 15 at 9-10). Plaintiff argues that Krampus in the Film also has these characteristics and thus is substantially similar to the Book's Krampus. (*Id.*). The elements claimed by Plaintiff, however, are not protectable. These elements are "too common and generic, and constitute *scenes-a-faire* that flow directly from" historical depictions of Krampus and themes of both Christmas and horror entertainment. *Newt v. Twentieth Century Fox Film Corp.*, 2016 WL 4059691, at *11 (C.D. Cal. July 27, 2016); (*see* D.I. 15 at 4-5). While the Film's Krampus does have some of these features, the elements are not sufficiently distinctive to allow for copyright protection. Further, a lay observer would not believe that the Film copied the Book's protectable

elements of expression—the exact illustrations in the Book—such as to support a finding of substantial similarity between the expression of Krampus in the Book and in the Film.

The "total concept and feel" of the two Krampus expressions also does not show substantial similarity. In the Film, Krampus only appears for a brief time while his monstrous minions do most of the action. When Krampus is seen in the Film, he is mostly in shadow, except for the climactic scene towards the end when protagonist Max tries to sacrifice himself to save his family. Only then do we see the sunken eyes and decrepit, zombie-like face of Krampus. The Film's Krampus has the air of a mystical and demonic being as he jumps between rooftops, sneak-attacks from deep underneath the snow, and has powers to open a fiery crater in the earth. While certainly not human, the Book's Krampus is more anthropomorphous and is less covert than Krampus in the Film. The face of the Book's Krampus is always readily seen, and in the Book, Krampus is present during the punishment and damage to the family and home. Rather than eerily ravaging an entire neighborhood, inducing a blizzard, and employing minions to pick off the family one-by-one (as in the Film), the Book's Krampus descends upon the family's home, steals the children, and promptly leaves in a sleigh. The "total concept and feel" of Krampus as expressed in the Film is significantly different from how Krampus is expressed in the Book. A lay observer would not find substantial similarity between the two.

I next turn to Plaintiff's infringement claims relating to Krampus's entrance through the chimney and his monstrous minions. Plaintiff claims that the Film copies from the Book Krampus's head-first entrance through the chimney, which cracks the flue. (D.I. 15 at 11-12). Krampus's entrance is an unprotectable idea and thus Defendants' Film cannot infringe it. Plaintiff also alleges that the Film copied the "dark elves," "demonic toys," and "evil, shaggy

6

reindeer" from the Book. (*Id.* at 12-15). These too are each ideas that cannot be protected by copyright and are therefore not infringed.

Plaintiff further alleges that the Film copies the title style of the Book because the Film title also is in a serif font with white text on a colored background and has "a curly 'S,' and a descending stroke of the 'R'." (D.I. 15 at 15). These elements, however, are unprotectable as they are in the public domain. *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 132 (2d Cir. 2003) ("Thus the public domain includes, for example, both the generic shape of the letter "L" and all of the elaborately more specific "L's" from the hundreds of years of font designs that have fallen into the public domain."). The Book's title style therefore cannot be infringed.

Regarding Defendants' Graphic Novel, Plaintiff alleges that it copies both the cover of the Book and the depictions of Krampus in the Book. (D.I. 15 at 16-17). The elements of the Book cover that Plaintiff claims are "distinctive and creative" are unprotectable ideas. (*Id.* at 16). For example, Plaintiff points to the image of Krampus with glowing eyes and an open mouth, and a house with lights in the windows. (*Id.*). An open mouth and lit-up windows are ideas that cannot be protected by copyright. The "total concept and feel" of the two covers is also different such that it does not support a finding of substantial similarity. The Book cover is a silhouette of Krampus as he swallows up Christmas trees. The Graphic Novel cover, however, has a detailed image of Krampus from the Film in the background behind the house and a group of menacing-looking snowmen in the foreground.

As for the expressions of Krampus in the Graphic Novel, Plaintiff again alleges similarity in the horns, glowing eyes, and tattered red robe. (*Id.* at 17). As previously stated, these elements are unprotectable ideas. The "total concept and feel" of the Graphic Novel is also

7

different from that of the Book.  Like in the Film, Krampus in the Graphic Novel is barely shown, leaving much of the story to other characters.  Graphic Novel Krampus is more like a villain in action-genre entertainment than the Book's folklore character.  The Graphic Novel tells four different, dark, and complex stories where Krampus is the villain aided by his monstrous minions.  These stories do center around Christmastime, but stray far from the folklore Krampus punishing naughty children.  A lay observer would not find the Book and the Graphic Novel to have the same total concept and feel such as to find them substantially similar.  Further, a lay observer would not believe that the Graphic Novel copied the Book's protectable elements of expression—the exact cover and illustrations in the Book.  Thus, there is no support for finding substantial similarity between the Book and in the Graphic Novel.

Plaintiff also claims that Defendants' promotional materials, the Film Facebook Page and "Halloween Horror Nights" event, contain images and content (some of which are from the Film) that copy the Book.  (D.I. 15 at 17-19).  To the extent that these promotional materials contain direct images from the Film, these images are not substantially similar for the reasons already stated.  Plaintiff alleges that the display at the "Halloween Horror Nights" event copied the Book because it showed Krampus's hand coming out of the chimney and the Film title in the curly serif font.  (*Id.* at 18).  As previously discussed, these elements are unprotectable.  Defendants' promotional materials are therefore not substantially similar to the protected elements of the Book.

After comparing the protectable elements of the Book to the Film, Graphic Novel, and Defendants' promotional material, I find that there is no substantial similarity between the Book and Defendants' works.  Plaintiff has therefore not stated a claim of copyright infringement of his Book against Defendants.

ii. Plaintiff's YouTube Video

In 2012, Plaintiff made the YouTube Video containing illustrations from the Book and a voiceover reading the text of the Book. (D.I. 15 at 6). Plaintiff did not obtain a copyright registration on the YouTube Video, but the Video is a derivative work of the Book. "[W]here the preexisting work is registered, but the derivative work is not, a suit for infringement may be maintained as to any protected element contained in the registered preexisting work, but not as to any element original to the unregistered derivative work." *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp. 2d 147, 158 (E.D.N.Y. 2002). Plaintiff may therefore claim infringement of the YouTube video only for elements that are also present in the Book.[1] For the same reasons as stated for the Book, there is no substantial similarity between the protectable elements in the YouTube Video and either Defendants' Film or Graphic Novel. Plaintiff has therefore not stated a claim of copyright infringement against Defendants.

b. Access

The second factor in analyzing whether there has been "unauthorized copying of original elements of plaintiff's work" is actual copying. *Tanksley*, 902 F.3d at 173. Both factors, however, must be satisfied for an adequate showing of unauthorized copying. *See id.* Plaintiff has failed to sufficiently allege substantial similarity between the Book and Defendants' accused works. Thus, I need not and will not consider whether the complaint sufficiently alleges actual copying. *See id.*

---

[1] Plaintiff also claims that the "Day of the Dead Krampus" skull and "Krampus Masks" are copied by Defendants, but these derivative works are so different from the Book that they do not benefit from the protection of the copyright registration and thus they cannot be the basis for a claim of copyright infringement. (D.I. 15 at 19); 17 U.S.C. § 411(a); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010) ("Section 411(a)'s registration requirement is a precondition to filing a claim.").

*c. Summary*

In the instant case, there is no substantial similarity between Plaintiff's works (the Book and YouTube Video) and Defendants' Film, Graphic Novel, or promotional materials. Thus, Plaintiff's amended complaint fails to state a claim of copyright infringement.

**B. Indirect Infringement**

In the second and third counts of Plaintiff's amended complaint, Plaintiff alleges that Defendants are contributorily and vicariously liable for infringement of the Book. (D.I. 15 at 20-22). There can be no indirect infringement without direct infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005). Plaintiff has failed to sufficiently allege direct infringement by Defendants. Thus, Plaintiff does not state claims for contributory infringement or infringement based on vicarious liability.

**C. Moral Rights**

The fourth count of Plaintiff's amended complaint alleges that Defendants have "infringed upon Plaintiff's moral rights by not attributing Mr. Purohit as the author/creator" of the Film, Graphic Novel, or promotional materials. (D.I. 15 at 22-23). The Book, however, is not eligible for moral rights protection under 17 U.S.C. §106A. Section 106A only applies to "works of visual art." "A work of visual art" is "a painting, drawing, print, or sculpture, existing in a single copy, in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author." 17 U.S.C. § 101. "A work of visual art does not include any . . . book." *Id.* Plaintiff's copyrighted work is a book, which is explicitly exempt from being "a work of visual art." Plaintiff argues that the Book is a "work of visual art" because it contains paintings and drawings. (D.I. 22 at 16). In doing so, Plaintiff ignores the requirement that the painting or drawing must be limited to 200 copies or fewer. 17 U.S.C. § 101. Plaintiff has sold

"over 500 copies" of the Book. (D.I. 15 at 7). The Book is therefore not eligible for moral rights protection under § 106A.

### D. Remedies

Plaintiff has failed to state a claim of copyright infringement. Thus, the fifth and sixth counts, which do not allege additional claims, but instead request remedies, cannot stand alone. They too will be dismissed.

## III. CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6) (D.I. 18). An accompanying order will issue.